RECORD NO. 13-35651

In The
# United States Court of Appeals
For The Ninth Circuit

## TARAH SAHLBERG,

*Plaintiff-Appellant,*

v.

## P.S.C., INC., and
## ADAMS & ADAMS LAW, P.S.

*Defendant-Appellees.*

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT TACOMA**

_____

**BRIEF OF APPELLANT**

_____

**Russell S. Thompson IV
WEISBERG & MEYERS LLC
5025 N. Central Ave. #602
Phoenix, AZ 85012
602-388-8898**

*Counsel for Appellant*

# Table of Contents

Page(s)

Table of Authorities……………………………………………………………..iv

Statement of Subject Matter and Appellate Jurisdiction…………………………...1

Statement of the Issues……………………………………………………...1-2

Statement of the Case……………………………………...…………..2-3

Statement of the Facts…………………………………………………..3

    A.    PSC attempted to collect a debt for medical services from Ms. Sahlberg through nonjudicial collection methods……………………3

    B.    PSC represented that Ms. Sahlberg's debt was accruing interest to which it was not yet entitled, at rates of 12% and 12.68% per annum…………………………………………………………..4

    C.    PSC hired Adams, which also attempted to collect prejudgment interest prior to obtaining a court ruling that it was entitled to such interest………………………………………………………4

    D.    On behalf of PSC, Adams sued Ms. Sahlberg in state court, wherein Ms. Sahlberg raised various potential affirmative defenses under consumer protection statutes………………………..5

    E.    Without addressing Ms. Sahlberg's affirmative defenses, the state court entered judgment against Ms. Sahlberg for the underlying medical debts……………………………………...6-7

    F.    Ms. Sahlberg brought a federal suit against Adams and PSC under the FDCPA and WCPA for their unlawful debt collection practices…………………………………………………..7

    G.    The district court dismissed Ms. Sahlberg's claims on the grounds of res judicata and collateral estoppel…………………8-9

Summary of the Argument……………………………………………...9-10

i

Standard of Review………………………………………………………..10

Argument……………………………..…………………………………..11

    A.   The district court committed legal error by finding that res judicata and collateral estoppel barred Ms. Sahlberg's claims against PSC, because she did not—and was not required to—bring her claims in state court…………………………………11

        1.   Collateral estoppel could not have barred Ms. Sahlberg's claims against PSC because they were not actually litigated in, or necessary to the outcome of, the state court suit…………………………………………………12

            a.   Collateral estoppel requires an issue actually be litigated, and be necessary and essential to the outcome of the case…………………………12

            b.   Ms. Sahlberg's affirmative defenses for offset under the FDCPA, TILA, CROA, and the TCPA were not claims for relief or causes of action………….13

            c.   Ms. Sahlberg's affirmative defenses were not necessarily and finally determined in the state court action…………………………………….....14

            d.   Ms. Sahlberg did not even raise a WCPA claim as an affirmative defense……………………………....15

            e.   Applying collateral estoppel against Ms. Sahlberg works an injustice…………………………………...16

        2.   Ms. Sahlberg's claims against PSC were not barred by res judicata because she was not required to bring her FDCPA and WCPA causes of action as counterclaims………………..16

            a.   Federal courts are virtually unanimous that a state-based contract claim for a debt is not a compulsory counterclaim in an FDCPA action……….17

b.  Washington's res judicata law is similar, if not identical, to compulsory counterclaim test employed by federal courts…………………………….………18

c.  Ms. Sahlberg's federal action and PSC's state action require different evidence and do not arise from a common nucleus of operative facts……………………19

d.  Ms. Sahlberg's federal action would not undermine the state court judgment………………………………..20

i.  PSC represented Ms. Sahlberg's debt as accruing 1% per month on the unpaid principal balance; this is the equivalent of 12.68%..............................................................21

ii.  Ms. Sahlberg does not dispute that PSC became entitled to 12% prejudgment interest after its claim was adjudicated by a court; she alleges the representation that it was entitled to such interest prior to adjudication was a violation of the FDCPA…………………………………………….22

B.  The district court committed clear legal error by finding that collateral estoppel barred Ms. Sahlberg's claims against Adams…...25

Conclusion……………………………………………………………………...26

Statement of Related Cases…………………………………….………………26

Certificate of Compliance

Certificate of Filing and Service

iii

# Table of Authorities

**Cases**                                                                **Page(s)**

*Ayres v. Nat'l Credit Mgmt. Corp.*
    No. CIV.A. 90-5535
    1991 WL 66845 (E.D. Pa. Apr. 25, 1991)…………………………17, 18, 19

*Baker v. G. C. Servs. Corp.*
    677 F.2d 775 (9th Cir. 1982)………………………………………………17

*Blasi v. Williams*
    775 F.2d 1017 (9th Cir. 1985)……………………………………….……11

*Davis & Cox v. Summa Corp.*
    751 F.2d 1507 (9th Cir. 1985)…………………………………………….…10

*Dejana v. Marine Tech., Inc.*,
    No. 4:11-CV-1690-JAR
    2013 WL 1282327 (E.D. Mo. Mar. 26, 2013)……………………………..14

*Hart v. Clayton-Parker & Associates, Inc.*
    869 F. Supp. 774 (D. Ariz. 1994)…………………………………………17-18

*Hirata v. Evergreen State Ltd. P'ship No. 5*,
    124 Wash. App. 631, 103 P.3d 812 (2004)………………………………14

*Leatherwood v. Universal Bus. Serv. Co.*
    115 F.R.D. 48 (W.D.N.Y. 1987)………………………………………….…17

*Marshall v. Thurston Cnty.*
    165 Wash. App. 346, 267 P.3d 491 (2011)………………………………18

*Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. City Sav., F.S.B.*
    28 F.3d 376 (3d Cir. 1994)……………………………………………..…13

*Peterson v. United Accounts, Inc.*
    638 F.2d 1134 (8th Cir.1981)………………………………………………17

*Reichert v. Nat'l Credit Sys., Inc.*
     531 F.3d 1002 (9th Cir. 2008)…………………………………………22

*RSUI Indem. Co., Inc. v. Vision One, LLC*
     No. C08-1386RSL
     2013 WL 662966 (W.D. Wash. Feb. 21, 2013)……………….……...23

*Sparrow v. Mazda Am. Credit*
     385 F. Supp. 2d 1063 (E.D. Cal. 2005)………………………………...18

*Taylor v. Shigaki*
     84 Wash. App. 723, 930 P.2d 340 (1997)……………………………..23

*Whitaker v. Ameritech Corp.*
     129 F.3d 952 (7th Cir.1997)…………………………….……………17

*State v. Williams*
     132 Wash. 2d 248, 937 P.2d 1052 (1997)………………………….….13

*Yakima Cnty. v. Yakima Cnty. Law Enforcement Officers Guild*
     157 Wash. App. 304 (2010)………………………….…13, 15, 18, 19, 20

## Statutes

15 U.S.C. § 1692e(2)(A)…………………………………………...…..7, 21

15 U.S.C. § 1692e(5)………………………………………….……..7, 21

15 U.S.C. § 1692e(10)…..…………………………………….……..7, 21

15 U.S.C. § 1692f(1) …………………………………………….…..7, 21

15 U.S.C. § 1692g(a)(1)………………………………………..…….7, 21

15 U.S.C. § 1692k……………………………………………...…...14

15 U.S.C. § 1692k(d)……………………………………………...…..1, 18

28 U.S.C. § 1291……………………………..…………………………..1

28 U.S.C. § 1331…………...……………………….………………………………1

R.C.W. 19.52.010……………………………………………………....…..5, 23

R.C.W. 19.86.020……………………………………………………....…7

R.C.W. 19.16.250(8)………………………………………………………7

R.C.W. 4.56.110………………………………………………………..23

**Rules**

Fed. R.  Civ. P. 13………………………………………………………14

## Statement of Subject Matter and Appellate Jurisdiction

The United States District Court for the Western District of Washington had jurisdiction over Tarah Sahlberg's original complaint under 15 U.S.C. § 1692k(d) and 28 U.S.C. § 1331. Exercising that jurisdiction, Judge Robert S. Lasnik granted the motion for summary judgment filed by P.S.C., Inc. ("PSC") and Adam & Adams Law, P.S. ("Adams"), R.E. 3-11,[1] and entered judgment against Ms. Sahlberg on all counts of her complaint. R.E. 12. Thirty days after judgment was entered, Ms. Sahlberg filed her notice of appeal. R.E. 1-2. This Court has jurisdiction over Ms. Sahlberg's appeal under 28 U.S.C. § 1291.

## Statement of the Issues

1.   Appellees attempted to collect prejudgment interest from Ms. Sahlberg prior to the time they obtained a judgment entitling them to such interest. Ms. Sahlberg brought FDCPA claims against them for unlawful debt collection practices. The district court held that Ms. Sahlberg's FDCPA claims were barred by *res judicata*, because "the prosecution of [her claim] would impair the rights established in the earlier action." Where Ms. Sahlberg does not challenge the outcome of the earlier action, did the district court err?

2.   Collateral estoppel applies to issues that have been actually litigated and determined on the merits. Here, Ms. Sahlberg raised an affirmative defense

---

[1]   Ms. Sahlberg refers to the record excerpts as "R.E. [page number(s)]."

in a state action against her that her debt *might* be offset by potential violations of the Fair Debt Collection Practices Act ("FDCPA"), if discovery so revealed.  She did not identify specific sections of the FDCPA, let alone those alleged in her federal complaint, so the state court "did not directly rule" on the issue.  Did the district court err in finding collateral estoppel barred her FDCPA action?

3.    Ms. Sahlberg's federal complaint alleges WCPA claims against PSC and Adams. Ms. Sahlberg never raised these claims against PSC in state court, and Adams was not even a party to the state court suit.  Yet, the district court held that these claims were barred because she could have brought them in her state action. Did the district court err by finding that collateral estoppel barred her WCPA claim against Appellees?

## Statement of the Case

Through her original complaint against Appellees, Ms. Sahlberg asserted individual claims under the FDCPA and the WCPA. Dkt #1.[2] Upon receipt of that complaint, Adams filed its answer, Dkt. # 6, and PSC filed its answer. Dkt #10.

Adams filed a motion for summary judgment on all counts, Dkt. #13, as did PSC. Dkt. #16. Thereafter, Ms. Sahlberg filed a response to Appellees' motions.

---

[2]    Ms. Sahlberg refers to the district court's record as "Dkt #[docket entry]."

Dkt # 23. PSC filed a reply, Dkt. # 24, as did Adams. Dkt #26. The district court granted Appellees' motion for summary judgment. R.E. 3-11.

**Statement of the Facts**

**A.    PSC attempted to collect a debt for medical services from Ms. Sahlberg through nonjudicial collection methods.**

Ms. Sahlberg incurred various medical bills between 2007 and 2010. Dkt. #1, ¶¶ 16-24. On at least one occasion where Ms. Salhberg received the related medical services, she agreed to the following contractual language:

> **FINANCIAL AGREEMENT**: The undersigned agrees that in consideration of services rendered, he/she hereby individually agrees to pay for MHS services in accordance with regular rates and terms. **The insured authorizes MHS to appeal on their behalf, any denial received from his/her insurance company.** Should a third party payor deny payment, the undersigned assumes and agreed to full financial responsibility. Should the account be referred to an attorney or collection agency, the undersigned shall pay all reasonable attorneys [sic] fees and/or collection costs.

Dkt. #1-3 (emphasis retained). Thus, while Ms. Sahlberg agreed to pay reasonable attorney's fees and collection costs, she did not contract to pay a specific rate of interest on the resulting amounts owed.

When Ms. Sahlberg's medical bills went unpaid due to insufficient insurance coverage, her medical providers sent her accounts to PSC for collections. Dkt. #1-4 PSC then began sending Ms. Sahlberg collection letters demanding payment. *Id*.

3

**B.    PSC represented that Ms. Sahlberg's debt was accruing interest *to which it was not yet entitled*, at rates of 12% and 12.68% per annum.**

In its September 1, 2012 collection letter, PSC stated that "INTEREST ACCRUES ON THE PRINCIPAL BALANCE AT THE RATE OF 12% PER ANNUM." Dkt. #1-4 (emphasis in original). PSC also represented that Ms. Sahlberg's debt consisted of a principal balance of $2,289.41 and $804.75, for a total balance of $3,094.16. *Id*.

In another collection letter, PSC stated that "[i]nterest is added at the rate of 1% per month on the unpaid balance unless your creditor specifies otherwise." Dkt. #1-6.  Adding interest at a rate of 1% on an unpaid principal balance once per month to that unpaid principal balance equates to a per annum interest rate of 12.68% interest.

**C.    PSC hired Adams, which also attempted to collect prejudgment interest *prior to obtaining a court ruling* that it was entitled to such interest.**

When PSC's collection efforts were unsuccessful, it hired Adams to file a lawsuit against Ms. Sahlberg. Dkt. #1-7. Adams sent Ms. Sahlberg a pre-suit collection letter stating that "[i]nterest accrues on the principal balance at a rate of 12% per annum." *Id*. The letter stated that she owed a balance consisting of a principal amount and interest already accrued and owing.[3] *Id*.

---

[3] The actual date of the letter is unknown, because the copy produced in discovery was generated at a later date. As a result, the interest stated in the copy of the letter is greater than the interest Adams actually stated that Ms. Sahlberg owed at the

**D.    On behalf of PSC, Adams sued Ms. Sahlberg in state court, wherein Ms. Sahlberg raised various potential affirmative defenses under consumer protection statutes.**

On December 7, 2011, Adams filed a lawsuit against Ms. Sahlberg in the superior court of King County, Washington. Dkt. #1-8. The lawsuit prayed "[f]or interest accrued to this date in the sum of $877.76, plus interest at the rate of 12% per annum from this date to the date of Judgment pursuant to RCW 19.52.010." *Id.* Ms. Sahlberg responded to this complaint. R.E. 17-20. In her answer, she raised as her Tenth through Fourteenth affirmative defenses, that "Plaintiff's claim may be subject to recoupment" or "subject to offset or barred," by the Truth-in-Lending-Act, the Equal Credit Opportunity Act, the Telephone Consumer Protection Act, the Fair Credit Reporting Act, and the Fair Debt Collection Practices Act, "if discovery reveal[ed] such violations." *Id.*

Ms. Sahlberg served discovery requests on PSC. On June 1, 2012, PSC, through Adams, responded to Ms. Sahlberg's discovery requests. This was, in spite of the fact that the letters produced in discovery were apparently generated on April 6, 2012.  *See e.g.*, Dkt. #1-6; Dkt. #1-7.  Because PSC reproduced documents pertaining to Plaintiff's account from its computer system, rather than providing original copies, the documents were filled with inaccuracies regarding the amounts PSC and Adams attempted to collect from Ms. Sahlberg.  *See* footnote 3, *supra*.

time it sent her the letter. For the purposes of this appeal, the actual amount is immaterial.

**E.    Without addressing Ms. Sahlberg's affirmative defenses, the state court entered judgment against Ms. Sahlberg for the underlying medical debts.**

On June 13, 2012, less than two weeks after it responded to discovery, PSC moved for summary judgment on it claim against Ms. Sahlberg. Dkt. #18 at 18. In her response to PSC's motion for summary judgment, Ms. Sahlberg requested for a stay to allow her additional time to conduct discovery. *Id*. at 22.

At the hearing, the state court denied Ms. Sahlberg's request for stay and granted PSC's motion for summary judgment. R.E. 22 (Transcript Page 8, lines 15-16). In passing, Ms. Sahlberg's counsel mentioned her affirmative defense of the potential offset of the debt by the various consumer protection statutes. R.E. 22 (Transcript Page 6, lines 6-13). Specifically, Ms. Salhberg's counsel stated at the hearing:

> [U]nder the Fair Debt Collection Practices Act, they have indicated and inserted things in there that are absolutely prohibited. And it is a strict liability matter. There is—There is an indication that there should be offsets for their violations of the Fair Debt Collection Practices Act for including information that should be excluded by HIPAA. These are not sealed under—filed under seal. Also, some of the offsets or the violations come under the Consumer Protection Act. Now, all of those matters preclude them from having this issue as a matter of law.

*Id*.

PSC, through its counsel Adams, did not respond to the above-comments and the court did not address them. *See id*. Ms. Sahlberg never amended her

6

answer to add a counterclaim for the claims that she alleged in her federal action.

The state court granted PSC's motion for summary judgment. R.E. 22 (Transcript Page 8, lines 21-25). In doing so, it held that the underlying debts were liquidated, and therefore subject to a prejudgment interest rate of 12%. R.E. 23 (Transcript Page 10, lines 21-25).

## F.    Ms. Sahlberg brought a federal suit against Adams and PSC under the FDCPA and WCPA for their unlawful debt collection practices.

Ms. Sahlberg filed suit against PSC and Adams for their collection activities prior to the initiation of the state court debt collection suit. Dkt. #1. Ms. Sahlberg's complaint alleged that Appellees violated:

(1) 15 U.S.C. § 1692e(2)(A) for falsely representing the character, amount, or legal status of her debt;

(2) 15 U.S.C. § 1692e(5) for threatening to take an action against her that cannot be legally taken or that was not actually intended to be taken;

(3) 15 U.S.C. § 1692e(10) by using false representations or deceptive practices in connection with the collection of an alleged debt;

(4) 15 U.S.C. § 1692f(1) by collecting an amount from Plaintiff that is not expressly authorized by the agreement creating the debt and not permitted by law;

(5) 15 U.S.C. § 1692g(a)(1) by failing to meaningfully convey the amount of the alleged debt to Plaintiff; and

(6) RCW 19.86.020 for engaging in an unfair method of competition and unfair or deceptive practices, specifically, by failing to abide by the requirements of RCW 19.16.250(8).

*Id*. at ¶¶ 51-88.

**G.     The district court dismissed Ms. Sahlberg's claims on the grounds of *res judicata* and collateral estoppel.**

Appellees moved for summary judgment on Ms. Sahlberg's claims on the ground that they were barred by *res judicata* and collateral estoppel. Dkt. #13; Dkt. #16.  Ms. Sahlberg opposed Appellees' motions. Dkt. #23.

The district court granted Appellees' motions. R.E. 3-11. The court held that Ms. Sahlberg's FDCPA claims and WCPA claim against PSC were barred by res judicata and collateral estoppel. *Id*. It also held that her claims against Adams were barred by collateral estoppel. Regarding her FDCPA claims, the Court held:

> Although the court did not directly rule on her FDCPA arguments, they were clearly presented to the court and the court ruled against plaintiff. In addition, the subject matter of this suit is the same as that in the earlier suit. While it is true that PSC initiated the action to recover a debt, plaintiff asserted allegations that PSC's pre-litigation conduct violated several federal consumer protection statutes. Finally, plaintiff and PSC are bound by the judgment entered in the state court collection action. The judgment expressly included an award of interest accrued since plaintiff incurred the debt at a rate of 12 percent per year and it did not include a setoff.

R.E. 8 (citations to the record omitted). With respect to the WCPA claim, the district court held:

> [E]ven though plaintiff did not allege a violation of the CPA, this claim is also barred by res judicata and collateral estoppel. Res judicata applies to claims that could have been asserted in the prior suit even if they were not actually raised. Even though plaintiff did not seek a setoff based on any alleged CPA violations, she did pursue a setoff under several federal statutes designed to protect consumers

and could have included her CPA arguments within the context of
these other claims.

*Id*. (internal citation omitted).

The district court, turning to the claims against Adams, stated "[h]aving
already found that the other elements of collateral estoppel are satisfied, the Court
finds that plaintiff's claims against Adams are barred by that doctrine." *Id*.

## Summary of the Argument

The district court erred by finding that Ms. Sahlberg's claims were barred by
*res judicata* and collateral estoppel. The state court did not adjudicate Ms.
Sahlberg's claims, because she did not bring them as counterclaims in state court.
Her answer to PSC's state complaint asserted non-specific affirmative defenses
under numerous statutes. Ms. Sahlberg did not raise, the parties did not brief, nor
did the state court address, the claims she brought in federal court. And, Ms.
Sahlberg did not even assert the WCPA claim as an affirmative defense. It was
therefore impossible that Ms. Sahlberg's claims had previously been decided on
the merits in another forum.

Furthermore, the adjudication of the claims in Ms. Sahlberg's federal
complaint would not disturb the state court judgment on the underlying debt. Her
federal action under the FDCPA and WCPA focuses on Appellees' collection
activities leading up to the state court lawsuit; the action does not relate to its
outcome. Ms. Sahlberg alleges that Appellees violated the FDCPA by attempting

9

to collect interest *prior* to obtaining a judgment that it was entitled to such interest, and by representing her debt as *already including* that interest. Thus, while the state court ultimately held that PSC was entitled to 12% pre-judgment interest because the debt was liquidated, this is immaterial to Ms. Sahlberg's claims.

Moreover, Ms. Sahlberg's federal complaint alleged that PSC represented that her debt was subject to 12.68% interest per annum, and the state court only found it was entitled to collect 12% interest per annum. So, even if the FDCPA allows a debt collector to represent that a consumer's debt is bearing interest prior to obtaining a judgment that the creditor is entitled to such interest—it does not—a judgment that PSC violated the FDCPA by representing that Ms. Sahlberg's debt was subject to 12.68% per annum does not conflict with the state court judgment.

Her WCPA claim is completely unrelated to whether Appellees were entitled to interest. Rather, it relates to whether Appellees' disclosures were proper. The district court's conclusion that it was barred by collateral estoppel against Adams was clearly erroneous. This Court must reverse the grant of summary judgment on the basis of these legal errors.

## Standard of Review

"Whether collateral estoppel is available is a mixed question of law and fact in which the legal issues predominate. The question of its availability is subject to our de novo review." *Davis & Cox v. Summa Corp.*, 751 F.2d 1507, 1519 (9th Cir.

1985). "The same standard is appropriate for determining the availability of res judicata." *Blasi v. Williams*, 775 F.2d 1017, 1018 (9th Cir. 1985). "Whether an identity of parties and causes exist in successive cases also is a mixed question of law and fact in which the legal issues predominate." *Id*.

**Argument**

**A.    The district court committed legal error by finding that *res judicata* and collateral estoppel barred Ms. Sahlberg's claims against PSC, because she did not—and was not required to—bring her claims in state court.**

The district court committed a clear legal error by holding that Ms. Sahlberg's claims against PSC were precluded by collateral estoppel and *res judicata*. Ms. Sahberg's claims were not tried by the state court, because she never brought her claims before the state court. She raised affirmative defenses, which are substantively different to claims or counterclaims. The parties never briefed, and the state court did not consider, whether PSC's claims were subject to offset. Moreover, PSC successfully engaged in tactics designed to avoid litigating the issue in state court. Thus, to apply collateral estoppel against her would be unjust.

While she may have had an opportunity to assert her federal suit claims as counterclaims in state court, she was under no obligation. Federal courts are virtually unanimous that such a counterclaim is permissive in nature. Thus, the fact that Ms. Sahlberg had the opportunity to, but did not bring her federal claims as counterclaims in state court is immaterial for *res judicata* purposes. As shown by

Washington's *res judicata* test, her federal claims and the claims against her in state court are not the same. The district court therefore misapplied the law by barring her claims against PSC.

> **1.    Collateral estoppel could not have barred Ms. Sahlberg's claims against PSC because they were not actually litigated in, or necessary to the outcome of, the state court suit.**

Ms. Sahlberg's claims, by definition, could not be barred by collateral estoppel because Ms. Sahlberg did not bring her claims in state court. Ms. Sahlberg pleaded affirmative defense that her debt *might* be offset by statutory damages under the various consumer protection acts *if discovery so revealed*. R.E. 18-19. She made only passing reference to a possible FDCPA "offset" at the hearing on summary judgment, but not with respect to the specific claims she brought in federal court. And the transcript of the hearing makes clear that the state court did not conduct a legal analysis of, and PSC was not required to defend against, any violations of consumer statutes. R.E. 21-24. This does not invoke the equitable doctrine of collateral estoppel.  Moreover, Ms. Sahlberg did not even mention the WCPA in her answer.  R.E. 18-19.

> **a.    Collateral estoppel requires an issue actually be litigated, and be necessary and essential to the outcome of the case.**

"The party seeking to avoid litigation of an issue based on collateral estoppel must show 'that (1) the issue decided in the earlier proceeding was identical to the issue presented in the later proceeding; (2) the earlier proceeding ended in a

judgment on the merits; (3) the party against whom collateral estoppel is asserted was a party to, or in privity with a party to, the earlier proceeding; and (4) application of collateral estoppel does not work an injustice on the party against whom it is applied.'" *Yakima Cnty. v. Yakima Cnty. Law Enforcement Officers Guild*, 157 Wash. App. 304, 331-32 (2010).

As an equitable defense, collateral estoppel protects a party from having to defend the same allegations on multiple occasions. *See State v. Williams*, 132 Wash. 2d 248, 253, 937 P.2d 1052, 1055 (1997) ("The doctrine of collateral estoppel is embodied in the Fifth Amendment guaranty against double jeopardy."). Thus, "[c]ollateral estoppel may be applied to preclude only those issues that have actually been litigated and necessarily and finally determined in a prior proceeding." *Yakima*, 157 Wash. App. at 332.

> **b.    Ms. Sahlberg's affirmative defenses for offset under the FDCPA, TILA, CROA, and the TCPA were not claims for relief or causes of action.**

It is important to consider that Ms. Sahlberg did not bring any claims in state court; she merely raised general affirmative defenses that were never addressed. "[I]t is plain enough that a defense or an affirmative defense is neither an 'action' nor a 'claim,' but rather is a response to an action or a claim." *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. City Sav., F.S.B.*, 28 F.3d 376, 393 (3d Cir. 1994). "[T]he innate difference between counterclaims and affirmative defenses" is that

"[a]ffirmative defenses challenge the plaintiff's legal right to bring an action but, unlike Rule 13 claims, do not allow for recovery." *Dejana v. Marine Tech., Inc.*, No. 4:11-CV-1690-JAR, 2013 WL 1282327, at *3 (E.D. Mo. Mar. 26, 2013).

The state court made no ruling on Ms. Sahlberg's affirmative defenses, as it surely would have had she alleged counterclaims. The state court's grant of summary judgment in favor of PSC, at most, means that the state court rejected her "offset" theory as a valid *defense* to PSC's claim that it was entitled to a money judgment on the underlying debt.  This would be a proper legal decision, because "[a]n offset is an equitable remedy," *Hirata v. Evergreen State Ltd. P'ship No. 5*, 124 Wash. App. 631, 639, 103 P.3d 812, 816 (2004), and the FDCPA does not provide equitable relief.  *See* 15 U.S.C. § 1692k (entitling plaintiff to monetary remedy only). Accordingly, Ms. Sahlberg brought no action or claim in state court.

### c.  Ms. Sahlberg's affirmative defenses were not necessarily and finally determined in the state court action.

The state court judge made no reference to Ms. Sahlberg's affirmative defenses at the hearing on PSC's motion for summary judgment. Nor could it have. Ms. Sahlberg had not raised any specific argument regarding her "offset" theory; she merely pleaded generic affirmative defenses.

The only possible specific reference to an FDCPA claim was her argument that filing the state court complaint publicly was a violation of HIPAA, because the complaint contained sensitive medical records. R.E. 22 (Transcript Page 6, lines 6-

14

9).  At no point in her response to the motion for summary judgment, R.E. 25-32, or at the hearing did Ms. Sahlberg argue the FDCPA claims that she pleaded in her federal complaint.  R.E. 21-24.

It simply cannot be said the specific legal theories upon which Ms. Sahlberg's federal claims rely were actually litigated and necessarily decided, since her specific FDCPA claims were never presented to the court; not in her answer, not in her briefing, and not at the hearing.

> ### d.    Ms. Sahlberg did not even raise a WCPA claim as an affirmative defense.

Even if the district court properly found that the state court's constituted a previous judgment on her federal claims—it could not have—it is simply impossible for it to have correctly concluded that her WCPA claim against PSC was barred by collateral estoppel.  The district court recognized that Ms. Sahlberg did not bring her claim against PSC for violations of the WCPA, yet it held that they were barred both by res judicata *and* collateral estoppel because she could have brought them at the same time. R.E. 8. This was clearly erroneous, as collateral estoppel only applies to issues that were *actually* litigated.  *Yakima*, 157 Wash. App. at 332.

     **e.**    **Applying collateral estoppel against Ms. Sahlberg works an injustice.**

Allowing PSC to avoid liability under the FDCPA and WCPA based on collateral estoppel would be unjust. Collateral estoppel should not be applied where to do so would "work an injustice on the party against whom it is applied."' *Id*. at 332. PSC waited until just before filing its motion for summary judgment to respond to Ms. Sahlberg's discovery requests, even though it is apparent that it created its records seven weeks prior to their disclosure. *See* Dkt. #1-6; Dkt. 1-7 (showing documents were generated on April 4, 2012). Moreover, PSC provided records that were not true and accurate, making it substantially more difficult for Ms. Sahlberg to parse out the factual background behind PSC's collection activities.

PSC should not be allowed to engage in dilatory litigation tactics to hamper Ms. Sahlberg's ability to litigate an issue in state court, and then claim collateral estoppel in federal court.

     **2.**    **Ms. Sahlberg's claims against PSC were not barred by *res judicata* because she was not required to bring her FDCPA and WCPA causes of action as counterclaims.**

The district court erred by holding that Ms. Salhberg's claims were barred *res judicata* on the ground that it "applies to claims that could have been asserted in the prior suit even if they were not actually raised." R.E. 8. The question is not whether Ms. Sahlberg *could have* litigated her affirmative defenses as

counterclaims, as this only requires an identity of the parties, a temporal relationship between the claims, and proper subject matter jurisdiction of the court.

Rather, the question is whether the actions are so related that she *should have* pursued her FDCPA claims as counterclaims in state court rather than filing her claims in a separate federal lawsuit. Federal courts consistently rule that a state claim for the underlying debt is not a compulsory counterclaim in an FDCPA claim, by employing an analysis virtually identical to Washington's *res judicata* test. Employing this test, Ms. Sahlberg's federal claims are not identical to the state court claims, and they are not barred by *res judicata*.

> ### a. Federal courts are virtually unanimous that a state-based contract claim for a debt is not a compulsory counterclaim in an FDCPA action.

Because the validity of the underlying debt is irrelevant to the question of whether a debt collector has violated the FDCPA, *see Baker v. G. C. Servs. Corp.*, 677 F.2d 775, 777 (9th Cir. 1982), the overwhelming majority of courts have held that a counterclaim for the underlying debt is not compulsory in an FDCPA suit. *See Whitaker v. Ameritech Corp.*, 129 F.3d 952 (7th Cir.1997), *Peterson v. United Accounts, Inc.*, 638 F.2d 1134 (8th Cir.1981); *Leatherwood v. Universal Bus. Serv. Co.*, 115 F.R.D. 48, 49 (W.D.N.Y. 1987); *Ayres v. Nat'l Credit Mgmt. Corp.*, CIV.A. 90-5535, 1991 WL 66845, at *1-2 (E.D. Pa. Apr. 25, 1991); *Hart v.*

*Clayton-Parker & Associates, Inc.*, 869 F. Supp. 774, 777 (D. Ariz. 1994); *Sparrow v. Mazda Am. Credit*, 385 F. Supp. 2d 1063, 1068 (E.D. Cal. 2005).

These courts generally employ a *res judicata* analysis in holding that "debt-collection actions do not arise out of the same 'transaction or occurrence'" as an FDCPA claim. *Ayres*, 1991 WL 66845 at *1-2 ("No such relationship exists between plaintiff's FDCPA claim and defendant's claim on the debt.").

Indeed, allowing a debt collector to avoid liability under the Act by claiming that the debtor should have raised his or her FDCPA claim as a counterclaim in a state court debt suit would greatly hamper the Act's effectiveness. It would also allow a state court's rules of procedure to trump the one year statute of limitations set by Congress for FDCPA claims. *See* 15 U.S.C. § 1692k(d).

**b.    Washington's *res judicata* law is similar, if not identical, to compulsory counterclaim test employed by federal courts.**

Under Washington law, to invoke the defense of *res judicata*, one must prove that there was a prior judgment in a case that shared the same subject matter and cause of action. *Yakima*, 157 Wash. App. at 327-28. Thus, "the doctrine does not apply if the claims are not the same." *Id*. at 328. "Washington courts have not articulated any precise test to determine when the subject matter of multiple claims is the same" but "the critical factors seem to be the nature of the claim or cause of action and the nature of the parties." *Marshall v. Thurston Cnty.*, 165 Wash. App. 346, 353, 267 P.3d 491, 495 (2011) (internal quotations and citations omitted).

18

"Courts generally focus on the asserted theory of recovery rather than simply the facts underlying the dispute." *Id*.

Thus, the dispositive issue is whether the causes of action are identical for res judicata purposes. Two causes of action "are identical for *res judicata* if (1) prosecution of the later action would impair the rights established in the earlier action, (2) the evidence in both actions is substantially the same, (3) infringement of the same right is alleged in both actions, and (4) the actions arise out of the same nucleus of facts." *Yakima*, 157 Wash. App. at 328.

> ### c. Ms. Sahlberg's federal action and PSC's state action require different evidence and do not arise from a common nucleus of operative facts.

The subject matter of the state lawsuit was whether PSC, as an assignee of the contract between Ms. Sahlberg and her medical providers, was entitled to a monetary judgment based on the laws of contract. This "centers on evidence regarding the existence of a contract, the failure to perform on a contract, or other circumstances leading to the creation of a valid debt." *Ayres*, 1991 WL 66845 at *1. Ms. Sahlberg's federal claims are based "on evidence regarding the improprieties and transgressions, as defined by the FDCPA, in the procedures used to collect the debt, regardless of the debt's validity." *Id*.

Here, PSC proved its claims by providing the contract between Ms. Sahlberg and the medical providers, the medical bills and proof of services rendered, the

assignments of the debt from the medical providers to PSC, and the evidence that Ms. Sahlberg did not pay those amounts. Ms. Sahlberg, on the other hand, relies almost exclusively on the collection letters that PSC sent her in its attempts to collect the debt.  Dkt. #1.

### d.   Ms. Sahlberg's federal action would not undermine the state court judgment.

In discussing the state court judgment, the district court noted that it "expressly included an award of interest accrued since plaintiff incurred the debt at a rate of 12 percent per year."  R.E. 8.  It appears to rely on this fact for the res judicata principle that a later action should not be allowed where the "prosecution of the later action would impair the rights established in the earlier action." *Yakima*, 157 Wash. App. at 328.  First, this ignores the fact that Ms. Sahlberg's complaint alleges that PSC falsely represented her debt as accruing 1% interest per month—which equals 12.68% per annum, an amount not permitted under Washington law. Dkt. #1, ¶ 30. Second, Ms. Sahlberg alleges that PSC falsely represented her debt as already consisting of 12% interest *before* it obtained a judgment that it was entitled to this interest. *Id.* at ¶ 29. That PSC was ultimately successful in obtaining a judgment that included 12% prejudgment interest is immaterial, because at the time it represented the amount of the debt, it had not obtained its judgment and was therefore not yet entitled it.

       **i.**    **PSC represented Ms. Sahlberg's debt as accruing 1% per month on the unpaid principal balance; this is the equivalent of 12.68%**

In one of its collection letters, PSC represented that "[i]nterest is added at the rate of 1% per month on the unpaid balance unless your creditor specifies otherwise." Dkt. #1-6. Adding 1% of the balance to the balance once every month results in a higher interest rate than 12%; it leads to a yearly interest rate of 12.68%.[4] This is in excess of 12%—which is the highest interest rate permitted by Washington law. *See* RCW 19.54.010.

Thus, Ms. Sahlberg's federal complaint properly alleged that PSC violated 15 U.S.C. § 1692e(2)(A)—for falsely representing the character, amount, or legal status of a debt; 15 U.S.C. § 1692e(5)—for threatening to take an action that cannot be legally taken; 15 U.S.C. § 1692e(10)—for using false or deceptive means in collecting a debt; 15 U.S.C. § 1692f(1)—for attempting to collect an amount not expressly permitted by the agreement creating the debt or by law; and 15 U.S.C. § 1692g(a)(1) for failing to state the amount of the alleged debt. Dkt. #1 at ¶¶ 51-65.

---

[4]    A debt of $100.00 that accrues 12% interest per year will be, after one year, $112.00. But a debt of $100.00 that accrues 1% interest per month, will be: $101.00 after one month, $102.01 after two months, $103.03 after three months, $104.06 after four months, $105.10 after five months, $106.15 after six months, $107.21 after seven months, $108.29 after eight months, $109.37 after nine months, $110.46 after ten months, $111.57 after eleven months, and, finally, $112.68 after twelve months.

The difference in interest may seem slight, but compound interest is a powerful force: after 10 years, a principal balance subject to a 12.68% interest rate would be 6% higher than a balance subject to a 12% interest rate.  And the FDCPA is a strict liability statute, imposing penalties notwithstanding a lack of actual damages to the plaintiff or intent by the debt collector to violate the Act. *See Reichert v. Nat'l Credit Sys., Inc.*, 531 F.3d 1002, 1006 (9th Cir. 2008).  Strict liability serves a prophylactic function, ensuring that debt collectors maintain rigid compliance with the law.

Because the state court never ruled that PSC was entitled to 12.68% interest, adjudicating Ms. Sahlberg's FDCPA claim could not disturb the state court judgment. As described above, this claim was never presented to the state court and, therefore, never litigated. Holding that Ms. Sahlberg's FDCPA claims were barred by *res judicata* was legal error, and this Court should remand her case to allow her to proceed on this theory.

> ii. **Ms. Sahlberg does not dispute that PSC became entitled to 12% prejudgment interest after its claim was adjudicated by a court; she alleges the representation that it was entitled to such interest prior to adjudication was a violation of the FDCPA.**

Even a ruling from a federal court that PSC violated the FDCPA for representing that Ms. Sahlberg's debt consisted of 12% interest would not disturb the underlying judgment, as she does not dispute that PSC is *now* entitled to

prejudgment interest in the amount of 12%. She argues that PSC violated the FDCPA by representing, *before* it had even brought an action for the principal, that her debt already included interest.

Ms. Sahlberg never agreed to pay interest and prior to the state court's determination that the debt was valid and that it was liquidated, Ms. Sahlberg's debt did not include that amount of interest. *See Taylor v. Shigaki*, 84 Wash. App. 723, 732, 930 P.2d 340, 345 (1997) (prejudgment interest only allowed when a claim is liquidated or unliquidated, but subject to computation through fixed standard in contract). Thus, it is not appropriate for PSC to claim that Ms. Sahlberg's debt included interest—even if turns out that a state court rules in favor of PSC—until it receives such judgment.

Appellees will surely argue that RCW 19.52.010 permitted it to represent that her debt was already accruing interest. But, by virtue of the fact that the state court had to first find that the debt was liquidated necessarily means it relied on a different statute. *See RSUI Indem. Co., Inc. v. Vision One, LLC*, No. C08-1386RSL, 2013 WL 662966 (W.D. Wash. Feb. 21, 2013) ("[Defendant] argues that the rates in RCW 4.56.110 apply to postjudgment interest, not prejudgment interest, and the applicable rate is 12 percent per year, as described in RCW 19.52.010. Contrary to [Defendant]'s argument, Washington courts use RCW 4.56.110 to determine the applicable prejudgment interest rate.").

Therein lies the danger of permitting debt collectors to pick what interest rate they are entitled to, rather than requiring that they obtain a judgment before asserting they are owed interest. Indeed, being able to assert interest is the major advantage of drafting a contract with an express rate of interest. The downside, of course, is that consumers of medical services might think twice about agreeing to complete financial responsibility if they knew their debts were accruing at 12% interest. PSC tried to have its cake and eat it to, asserting it was already entitled to interest without establishing such in court.

Furthermore, the argument that Ms. Sahlberg's debt *already* consisted of prejudgment interest leads to an outcome whereby a consumer who receives a hospital bill, and promptly pays it, still technically owes the interest that accrued between the time the bill was printed and the time that payment was received. What then? Ms. Sahlberg can find no authority that a statute allowing for prejudgment interest creates its own cause of action. Rather, prejudgment interest is ancillary to a claim for the debt itself, and therefore does not exist until a *judgment* is entered. Creditors seeking to collect interest must either put this amount in a contract, or seek prejudgment interest in a court of law.

Because Ms. Sahlberg's FDCPA claim is based on PSC's attempt to collect prejudgment interest before it obtained a judgment, adjudicating her claim will not disturb the state court judgment.

24

**B.     The district court committed clear legal error by finding that collateral estoppel barred Ms. Sahlberg's claims against Adams.**

The district court summarily granted judgment in favor of Adams, saying, "[h]aving already found that the other elements of collateral estoppel are satisfied, the Court finds that plaintiff's claims against Adams are barred by that doctrine." R.E. 10. As explained above, the district court misapplied collateral estoppel to Ms. Sahlberg's claims because she never actually litigated the claims she brought before federal court. Ms. Sahlberg's WCPA claims were not even included as part of her answer.

Moreover, Ms. Sahlberg's claims against Adams were based on completely separate conduct.  So even if this Court holds that Ms. Sahlberg previously litigated her claims by raising generic affirmative defenses—she didn't—it cannot uphold the district court's finding that the claims against Adams were barred by collateral estoppel because Adams' conduct could not have even been implicitly analyzed in the state court action.

Thus, finding collateral estoppel barred her WCPA claims was clear legal error.  Ms. Sahlberg did not actually litigate her FDCPA or WCPA claims, and this Court should reverse the district court's judgment.

**Conclusion**

The district court held that res judicata and collateral estoppel barred Ms. Sahlberg's FDCPA and WCPA claims against PSC and Adams. None of these claims were ever litigated in the state court action, nor was she required to pursue them as counterclaims in that forum. Allowing Ms. Sahlberg to proceed with her claims in federal court would not undermine the state action, because she alleges it was Appellees' collection methods that were improper. She does not dispute that PSC is now entitled to prejudgment interest; she alleges that its attempt to collect prejudgment interest prior to obtaining a judgment was a violation of the FDCPA. She also alleges that PSC falsely represented that her debt was accruing 12.68% interest, which in no way relates to the outcome of the state court action. Finally, the state court never even considered her WCPA claims, which are separate and distinct from her FDCPA claims. This Court must reverse the district court's clear legal error.

## Statement of Related Cases

Pursuant to Circuit Rule 28-2.6, Appellant states that she is unaware of any related cases pending in this Court.

Respectfully submitted,

/s/ Russell S. Thompson IV
Russell S. Thompson IV
WEISBERG & MEYERS LLC
5025 N. Central Ave. #602
Phoenix, AZ 85012
602-388-8898

*Counsel for Appellant*

## Certificate of Compliance

1.  This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

    [ X ] this brief contains [*6,302*] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

    [ ] this brief uses a monospaced typeface and contains [*state the number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

    [ X ] this brief has been prepared in a proportionally spaced typeface using [*Microsoft Word 2007*] in [*14pt Times New Roman*]; *or*

    [ ] this brief has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].

Dated: <u>November 27, 2013</u>          /s/ Russell S. Thompson IV
                                        *Counsel for Appellant*

## Certificate of Filing and Service

I hereby certify that on this 27th day of November, 2013, I caused this Brief of Appellant and Excerpts of Record to be filed electronically with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

Dan Kyler
Rush, Hannula, Harkins & Kyler, LLP
4701 S. 19th St., #300
Tacoma, WA 98405

*Counsel for Appellee P.S.C., Inc.*

Bart Adams
Adams & Adams Law, P.S.
2626 North Pearl Street
Tacoma, WA 98407

*Counsel for Appellee Adams & Adams, Law, P.S.*

<u>/s/ Russell S. Thompson IV</u>
*Counsel for Appellant*